# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| SUSAN BOWSER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CV414-036 |
| CAROLYN W. COLVIN,<br>*Acting Commissioner of Social Security*, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Susan Bower, a 54-year-old woman suffering from multiple medical conditions including back problems, lupus, fibromyalgia, and post-traumatic stress disorder, appeals the Commissioner's denial of her request for Title II disability and disability insurance benefits. (Doc. 1.) Her claim was denied both initially and upon reconsideration. (Tr. 75.) Thereafter, an Administrative Law Judge ("ALJ") conducted a hearing and again denied benefits. (Tr. 75-84; 90-109 (hearing transcript).) The Appeals Council denied her request for review, making the ALJ's

decision the final decision of the Commissioner. (Tr. 1-4.) Now she complains in this Court that the Commissioner erred in reaching her decision. (Doc. 1.) For the following reasons, the Commissioner's decision should be affirmed.

I. STANDARD OF REVIEW

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot

substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met the burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. *Id.* If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. *Id.* At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing

3

20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). If she cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Moore*, 478 F. App'x at 624.

## II. ANALYSIS

The ALJ evaluated all of the medical evidence of record and found that Bowser suffered from multiple step-two impairments: "cervical and lumbar radiculopathy and spondylosis; status post left ankle open-reduction internal fixation; lupus; Epstein bar[r] syndrome; fibromyalgia; chronic fatigue; adjustment disorder with depressed mood; and post-traumatic stress disorder." (Tr. 77.) He found that none of the impairments met a step-three listing. (Tr. 80.) At step four, the ALJ found that

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must have a sit/stand option. She can do occasional flexion of neck; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and avoid concentrated exposure to extreme cold and hazards, such as heights and machinery (Exhibit 22F).

(Tr. 81.) After questioning a vocational expert, the ALJ determined that Bowser could not return to her past relevant work as a pharmacy technician, electrician helper, cook, or baker. (Tr. 83.) Nevertheless, the vocational expert stated that plaintiff retained the capacity to work as an information clerk. (Tr. 84.) Accordingly, the ALJ found that she is not disabled. (*Id.*)

Bowser contends that the ALJ erred by: (1) applying an improper standard when evaluating the medical opinion evidence of record; and (2) improperly applying the pain standard. (Doc. 13 at 6-9.)

## A. Weighing Medical Evidence

Plaintiff contends that the ALJ erred by failing to state explicitly the weight that he assigned to certain medical evidence. (Doc. 13 at 6-7.) For instance, the ALJ failed to "state what weight, if any, he afforded to any of the consultative examiner's [sic] opinions," "the two psychiatric consultants' opinions," or the "State Agency consultant's" RFC finding. (*Id.* at 7.) According to Bowser, the ALJ's "failure to state what weight is afforded [a medical provider's opinion] is a failure to apply the correct legal standard," and such failures require that the case be reversed. (*Id.*)

The ALJ never stated the weight he assigned to each item of the medical evidence of record. But he was not under a duty to do so. In trying to create such a duty, Bowser relies upon a misreading of *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981). She points to language in the opinion asserting that an ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* at 735. But in that case the ALJ was subjected to a "special duty to develop the facts" of the case, since Cowart, unlike Bowser, was unrepresented at her disability hearing. *Id.* Too, the ALJ in *Cowart* simply failed to provide *any* explanation for his decision:

> The decision states only that the ALJ "has carefully considered all of the testimony . . . and exhibits . . . and has given weight to each as he feels should be properly accorded to it." This statement tells us nothing whatsoever -- it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it.

*Id.* Later cases have clarified that the key inquiry is whether the ALJ's decision enables a reviewing court to conduct meaningful judicial review. *E.g., Dyer*, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ

6

specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'") (alterations in original and citation omitted).

Here, the ALJ exhaustively catalogued the consultative examiners' opinions. Bowser

> underwent a consultative examination performed by Dr. Martha Pollock on October 23, 2007. Dr. Pollock noted that the claimant was pleasant and cooperative throughout the examination. Her walking was unimpaired. She had full range of motion of all joints. Also, all joints were free of tenderness, erythema, and effusion. She had no difficulty getting on or off the exam table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty hopping. Her neurological exam was normal. Dr. Pollock found the claimant's heart exam was essentially unremarkable. Her orthopedic exam was unremarkable. Dr. Pollock diagnosed the claimant with a history of possible neck strain verses a herniated disc (Exhibit 3 F). Subsequently, claimant had an MRI of the cervical spine performed on February 14, 2010, which revealed mild disc bulges at C4-5, C5-6, and C6-7 causing mild canal stenosis and straightening of the upper cervical spine with slight reversal of curvature centered at C5 (Exhibit 10F/4).

(Tr. 77-78.) He also weighed her consultative psychological evaluation:

> Dr. Zsigmond noted that the claimant's anxiety and depression began in 2004 after her life was impacted due to a hurricane that destroyed her house and impacted her employment as her pay was decreased. She reported symptoms of depressed mood, feelings of helplessness, tearfulness, and hopelessness. She was taking

7

> Lexapro and reported that it was helping. Dr. Zsigmond found claimant's prognosis was guarded due to ongoing medical and mental issues. Dr. Zsigmond diagnosed the claimant with adjustment disorder with depressed mood based on her report of depressed mood that began after personal loss as a result of a hurricane. Due to her reports of anxiety, concentration difficulties, restlessness, irritability, and nightmares that she had been having as a result of the psychological impact of a hurricane and her avoidance of places associated with these memories, she would be diagnosed with post-traumatic stress disorder. Dr. Zsigmond recommended that the claimant continue medical treatment and treatment for her psychological problems. [She] also recommended psychotherapy in order to provide support and to assist claimant in obtaining coping skills, in adjusting to not being able to engage in some of her previously enjoyed activities, and to provide assistance in developing pain management techniques (Exhibit 14F).

(Tr. 80.) Despite the guarded prognosis, Dr. Zsigmond found no restriction on plaintiff's activities of daily living:

> She reported to Dr. Zsigmond that the she cooks and does light housecleaning. She was appropriately dressed and groomed, with good basic functioning and hygiene. She had no fine motor shakes or tremors. Dr. Zsigmond found the claimant's activities of daily living were appropriate (Exhibit 14F/5). . . . In social functioning, the claimant has mild difficulties. She reported to Dr. Zsigmond that she was able to initiate and maintain friendships. She also reported good relationships with coworkers and supervisors, but her social life was limited due to her medical problems and lack of funds (Exhibit 14F/5). Therefore, the evidence establishes that the claimant has mild difficulties in maintaining social functioning.

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Zsigmond opined that due to claimant's reports of anxiety, concentration difficulties, restlessness, irritability, and nightmares that she has been having as a result of the psychological impact of a hurricane and her avoidance of places

8

associated with these memories, she was diagnosed with post-traumatic stress disorder (Exhibit 14F/5). Therefore, the evidence establishes that the claimant has moderate difficulties in maintaining concentration, persistence or pace of work.

(Tr. 80-81.)

In weighing this record evidence, the ALJ explained that the examiners' opinions were consistent with those of the non-examining consultants, though he only cites to a single non-examining consultant's report. (Tr. 83.) The record shows, however, that he did not cherry-pick the best evidence to reach his decision. The non-examining consultants, like the consultative examiners, uniformly found that plaintiff suffered from few limitations. (Tr. 471-484; tr. 485-492; tr. 502-515; tr. 535-542.) Furthermore, two of Bowser's treating physicians believed that she was capable of returning to work.[1] Dr. Schwartz, a surgeon who corrected

---

[1] An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other

9

Bowser's ankle, noted that she would be capable of returning to work not long after her surgery. (Tr. 545.) Dr. Hershkowitz, who treated her back and arm pain, similarly believed that she could return to work after he administered an "epidural steroid injection." (Tr. 382.) He noted that while she might be unable to work from August through October 2011, she should be expected to return to work by January 2012.[2] (Tr. 577, 581.) He also opined that she retained the capacity to lift and carry 10 pounds without restriction and up to 20 pounds on occasion. (Tr. 578.)

While the ALJ's opinion is not a benchmark of clarity or specificity, his findings are well supported by the record as a whole, and his decision is thus supported by substantial evidence of record. Moreover, even if

---

substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6. The opinions of examining physicians fall below a well-supported treating source opinion. *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). And non-examining physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f).

[2] Bowser contends that Dr. Hershkowitz's RFC limited her "sit/stand/walk" limitations to one hour at a time for a total of four hours in a work day. (Doc. 13 at 7.) In fact, he marked that she could sit/stand/walk for four hours at a time, but then, confusingly, stated that she could only do each for a total of one hour per day. (Tr. 578.) The answer is internally inconsistent and conflicts with his statement that she should be expected to return to work in early 2012. His notation certainly does not state what plaintiff says it does.

10

the ALJ erred by failing to explicitly assign weight to every medical opinion, the error was harmless. *E.g., Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 746 n.3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision").

## B. Pain Standard

Bowser claims that the ALJ erred by discrediting her subjective allegations of pain. (Doc. 13 at 8.) When a claimant attempts to establish disability through his or her own testimony of subjective pain, the "pain standard" applies. *Dyer*, 395 F.3d at 1210. The pain standard demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.

1987). If the ALJ decides to discredit the claimant's testimony, he must

"articulate explicit and adequate reasons" for doing so. *Id.*

Here the ALJ noted:

> At the hearing, the claimant testified that she that she injured her neck while lifting a heavy box at work. She filed for worker's compensation but the doctor told her that it was not a worker's compensation claim. She stated that she tried to file for unemployment but was denied because it was not a worker's compensation case. Then later, claimant interrupted and stated that she got an attorney for her worker's compensation claim and received a small settlement of $3,600 after attorney fees. . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible, because there is no evidence of any significant worsening in the claimant's medical condition. She testified that she injured her neck while lifting a heavy box at work. She has neck pain and has lupus, but stated that she is not taking any medications, because she cannot afford it. Obviously, claimant's neck pain and lupus are not as limiting as she alleges, because she is not taking any prescription or over-the-counter medications. In fact, the claimant has not taken any narcotic based pain relieving medications since April 2011, in spite of the allegations of quite limiting pain. **Also, Dr. Schwartz returned the claimant to full-time work and advised her to continue wearing a regular shoe and continue with her activities as tolerated** (Exhibit 23F/5).
>
> Claimant further testified that she drove to the hearing. She lives in a motor home with her husband. She stated that she cannot keep up with her housework. Her husband helps her with the laundry and cooking. She does no gardening or yard work. She stated that she has a computer at home and she checks her [F]acebook. She

does not go to church or the movies. Then later she stated that she cooks and cleans a little during the day and walks sometimes in the neighborhood. She reads magazines sometimes. The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

As for the opinion evidence, the undersigned gives great weight to the opinion of treating orthopedic specialist, Dr. Jeremy Schwartz, which indicated that the claimant could return to full-time work and advised her to continue wearing a regular shoe and continue with her activities as tolerated (Exhibit 23F/5), as it is consistent with the record when viewed in its entirety (Social Security Ruling 96-2p).

(Tr. 82 (emphasis in original).)

Bowser argues that the ALJ failed to properly apply the pain standard because medical evidence of record supports the existence of multiple underlying severe medical conditions. (Doc. 13 at 7-8.) The record evidence she cites is mostly unremarkable. For instance, she points to an ankle injury that had since been corrected with surgery, and, as noted above, the surgeon cleared her to return to work. (Tr. 421-425, 500.) Her family practitioner, Dr. Navija Valladares, noted that she reported generalized joint pain but also noted that she had begun to improve with treatment. (Tr. 463.) Furthermore, Dr. Valladares recommended that plaintiff participate in non-impact aerobic activity and stretching. (Tr. 465.) Finally, Bowser points to medical records

13

establishing that she injured her back at work, but those records pre-date her treatment by Dr. Hershkowitz, who believed she would be able to return to work. (Tr. 552-569; tr. 577 (Hershkowitz treatment notes suggesting that Bowser should be able to return to work).)

The only evidence in the record showing that plaintiff *still* suffers from severe pain is her own hearing testimony. She described her back pain as "constant," making it difficult for her to go on car trips or sit for long periods of time. (Tr. 104.) Her treatment notes show that her physicians expected her to improve and even recommended that she exercise. Furthermore, she admitted that she was able to drive, walk a bit around her neighborhood, cook and clean, read magazines, and check Facebook. (Tr. 98-99.) She also admitted that she can lift something as heavy as a gallon of milk (about 8.6 pounds), but she can only do so briefly. (Tr. 105.) The evidence of record is adequate to support the ALJ's finding that plaintiff's allegations of crippling pain were not entirely credible.

## III. CONCLUSION

The ALJ's determination that claimant could return to work is supported by substantial evidence of record. Consequently, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this __7th__ day of April, 2015.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA